577 A.2d 1358

**COMMONWEALTH LAND TITLE INSURANCE COMPANY and T.A. Title Insurance Company**

**v.**

**John DOE, d/b/a Martin Krasner and Harriet Krasner, Thomas Jefferson University, Martin Krasner and Harriet Krasner, h/w and Mellon Bank East (N.A.).**

**Appeal of T.A. TITLE INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued Dec. 12, 1989.

Filed July 6, 1990.

596

William J. Barker, Jr., Philadelphia, for appellant.

Neil S. Witkes, Philadelphia, for Commonwealth Land Title, appellee.

Before BROSKY, WIEAND and JOHNSON, JJ.

WIEAND, Judge:

The dispute in this appeal is between two innocent victims of fraud, both of whom sought to recoup their losses from a fund which was inadequate to satisfy both claims.

On June 21, 1988, T.A. Title Insurance Company (T.A. Title) was involved as title insurance company in a closing for real estate situated at 128–130 South Street, Philadelphia, which purportedly had been sold by or on behalf of Harriet and Martin Krasner. At the closing, T.A. Title delivered a check for $150,000 to a person representing himself to be the agent of the sellers. The check was deposited in an account which had been opened in the names of Harriet and Martin Krasner at Mellon Bank. On July 27,

1988, the sum of $37,000 was withdrawn from this account, leaving a balance in the account at that time of $114,010.30.

On July 29, 1988, Commonwealth Land Title Insurance Company (Commonwealth Land Title) was involved as title insurance company in a closing for premises known as 130 South Eleventh Street, Philadelphia. This real estate also was represented to have been sold by Harriet and Martin Krasner. At the closing, Commonwealth Land Title delivered a check for $284,686.29 to a person purporting to represent the sellers. This check was also deposited in the "Krasner" account at Mellon Bank. Following this deposit, the additional sum of $50,000 was withdrawn from the account, leaving a balance of $348,696.59.

It was subsequently discovered that the purported transfers of title had taken place without the knowledge of the true owners and that the deeds had been forged. The title insurance companies were notified of this development on August 8, 1988. Commonwealth Land Title acted promptly to seize the funds remaining in the Mellon Bank account. On August 10, 1988, it filed a fraudulent debtor's attachment against the account. T.A. Title did not take action until September 15, 1988, when it moved to intervene in the proceedings which had been instituted by Commonwealth Land Title. Intervention was granted on September 22, 1988, when the trial court also entered an order permitting Commonwealth Land Title to proceed against all moneys in the account in excess of $114,010.30, which was placed in escrow to await an adjudication of the respective rights of Commonwealth Land Title and T.A. Title.

On October 14, 1988, a hearing was held on the issue of the distribution to be made of the monies which had been placed in escrow. At that time, the agreed facts were recited to the court by counsel. Following argument by counsel and based on the agreed facts, the trial court, on October 21, 1988, entered its decision awarding to Commonwealth Land Title from escrowed funds the sum of $55,-101.78 and to T.A. Title the sum of $58,999.52. The effect of the trial court's order was to permit Commonwealth

Land Title to recoup its loss in full from the account opened at the Mellon Bank and to award to T.A. Title the balance of the funds in the account. A motion for post-trial relief in the nature of exceptions, pursuant to Pa.R.C.P. 227.1, was filed by T.A. Title and denied on March 16, 1989. Judgment was entered in accordance with the court's order of distribution on April 25, 1989, and this appeal by T.A. Title followed on May 3, 1989.

Commonwealth Land Title argues, inter alia, that T.A. Title's appeal should have been taken from the trial court's order of October 21, 1988, and that, therefore, an appeal taken on May 3, 1989 was untimely and improper. Insofar as the respective rights of Commonwealth Land Title and T.A. Title are concerned, however, it is clear that the parties submitted their respective claims to the trial court on stipulated facts, and that the proceedings held by the court were in the nature of a trial without jury on an agreed statement of facts.[1] Therefore, a motion for post-trial relief in the nature of exceptions to the court's decision was not inappropriate, and this Court has jurisdiction to entertain the appeal.

With respect to the first $37,000 withdrawn from the account at the Mellon Bank, it is clear that the transaction occurred before any Commonwealth Land Title money had been placed in the account. This withdrawal, therefore, involved only funds coming from T.A. Title. Because this withdrawal was of funds belonging to T.A. Title, it must

---

1. The facts on which the trial court's decision was based could have come only from the facts recited by counsel pursuant to stipulation. As the dissent has observed, there was no testimony taken at the hearing on October 14, 1988, and it is clear that the issue was not presented to the court on the basis of a case stated.

A case stated must be distinguished from a case tried by a court without jury upon stipulated facts, because on a case stated the parties submit an agreed statement of facts for the judgment of the court, whereas upon a trial without jury upon admitted facts the case is submitted for the decision of the court, in which latter case the court renders a decision instead of entering judgment. 7 Std.Pa.Prac.2d, Submission Upon Case Stated § 43:1 (1982).

suffer the loss of $37,000. Commonwealth Land Title cannot be required to share in this loss.

■ "Priority between attachments and competing liens or claims, or priority among rival attachments, depends generally upon their priority in time, which is determined by the days on which their processes were executed." 17 Std.Pa.Prac.2d, Attachment, Generally `§ 94:5 (1983). See: *Rice v. Walinszius*, 12 Pa.Super. 329 (1900). The vigilant debtor is to be rewarded not only for his own sake but as a matter of public policy. *Philadelphia National Bank v. Hilgert*, 3 Penny 437, 440 (Pa.1883). Thus, a fraudulent debtor's attachment takes priority over a lien created several days later. *Keystone State Corp., et al. v. Union Indemnity Co., et al.*, 43 Pa. D. & C. 69, 78–79 (Phila.1941).

■ In the instant case, the record is clear that Commonwealth Land Title's attachment was issued more than a month before T.A. Title acted to assert its rights by intervening in the garnishment proceedings which had been commenced by Commonwealth Land Title. Therefore, Commonwealth Land Title's attachment was entitled to priority over the claim of T.A. Title.

■ Appellant argues that because its check had been forged, title to the funds in the Krasner account at the Mellon Bank did not pass. Consequently, it argues, the funds remaining in the account were owned by it and Commonwealth Land Title and that the application of equitable principles requires a pro rata distribution. This argument is of no avail.

In the first place, "equity aids the vigilant, and not those who slumber on their rights." *Witmer v. Exxon Corp.*, 260 Pa.Super. 537, 556 n. 19, 394 A.2d 1276, 1286 n. 19 (1978), *aff'd*, 495 Pa. 540, 434 A.2d 1222 (1981). In this case, it was Commonwealth Land Title which acted diligently to prevent additional withdrawals from the account. T.A. Title did not act until an additional month had passed after Common-

wealth Land Title's attachment had effectively seized the account.

If T.A. Title is correct that title to the funds did not pass, it is nevertheless clear that its funds were commingled with funds of Commonwealth Land Title. In order to recover its funds, T.A. Title had to be able to trace its funds, and only funds so traced could be recovered. In attempting to trace funds, the rule in Pennsylvania is "first in, first out." Pursuant to this rule, "the legal presumption is that the moneys were paid out in the order in which they were paid in, and [the parties claiming ownership] are equitably entitled to any allowable preference in the inverse order of the times of their respective payments into the fund." *Empire State Surety Co. v. Carroll County et al.,* 194 F. 593, 605 (8th Cir.1912). See: *In re Woods Estate,* 350 Pa. 290, 294, 38 A.2d 28, 30 (1944); *Toll–Barkan Co. v. Toll,* 193 Pa.Super. 221, 225, 164 A.2d 36, 38 (1960); *Page v. Wilson,* 150 Pa.Super. 427, 433, 28 A.2d 706, 709 (1942); *Fischbach & Moore, Inc. v. Philadelphia National Bank,* 134 Pa.Super. 84, 91–92, 3 A.2d 1011, 1014 (1939). This rule, although criticized by some legal scholars, remains the law in Pennsylvania.

Thus, even if Commonwealth Land Title's attachment had been ineffective to seize funds in the account which belonged to T.A. Title, the proceedings were effective to seize funds of Commonwealth Land Title which remained in the account. Because the funds which had been withdrawn were funds belonging to T.A. Title, and because funds of Commonwealth Land Title had not been withdrawn, all of the funds advanced by Commonwealth Land Title remained in the account and could be recovered.

Thus, whether the funds in the "Krasner" account were attached as funds belonging to a third person or whether the commingled funds remained the property of the drawers of the checks, the trial court properly held that Commonwealth Land Title was entitled to a preference which

enabled it to recover in full the funds which it had supplied.[2]

Judgment affirmed.

JOHNSON, J., files a dissenting opinion.

JOHNSON, Judge, dissenting.

I agree with my esteemed colleagues that the action of the trial judge, the Honorable Albert W. Sheppard, Jr., should not be disturbed. However, I would find that the orders of October 21, 1988 disposed of all of the issues between the parties and were both final and appealable. I find Commonwealth Land Title Insurance Company's argument regarding T.A. Title Insurance Company's failure to file a timely appeal persuasive. I would dismiss this appeal as having been brought too late and would not address those issues relating to enforcement of money judgments. Therefore, I must respectfully dissent.

T.A. Title Insurance Company (T.A. Title), in its Reply Brief, argues that the trial court's orders of October 21, 1988 "embody the Court's adjudication of the merits of this case based upon a stipulation of facts, which adjudication requires the aggrieved party to file exceptions before taking an appeal." I find no support for this assertion in the record.

To begin, the trial court unequivocally declared that the first order of October 21, 1988 was pursuant to a "petition and rule" proceeding. Judge Sheppard wrote:

Preliminarily, analysis of the October 21st Orders as separate entities leads to the conclusion that the ... (FIRST) Order, in and of itself, was a final order pursuant to a "petition and rule" proceeding. As such, the Exceptions to this "FIRST" Order are procedurally improper and will *not* be considered by this Court. *See,*

2. We find it unnecessary to review the entry of the default judgment entered in favor of Commonwealth Land Title against Mellon Bank. T.A. Title has no standing to challenge the right of Commonwealth Land Title to recover its loss from the Krasner account at the Mellon Bank except to the extent that such recovery impairs T.A. Title's right to recover its loss from the same account.

*Haegele v. Pennsylvania General Ins., Co.* [sic], 330 Pa.Super 481, 479 A.2d 1005 (1984); *Kennedy v. Frank L. Black, Jr., Inc., supra.* Extensive discussion of this point is not necessary. Suffice it to say that reference to the preamble of the FIRST Order ... and the transcript of the October 21st hearing ... and the procedural posture of the matter ... demonstrates that this FIRST Order was entered to resolve claims arising from a petition and rule to show cause.

Memorandum, March 16, 1989, page 16. (emphasis in the original, footnote omitted).

T.A. Title did not even file its complaint in this action until December 16, 1988, long after the court's October 21, 1988 orders. The post-trial exceptions filed by T.A. Title on October 31, 1988 purportedly in pursuance of Pa.R.C.P. 227.1, responded only to the October 21st orders. T.A. Title had not responded to earlier orders of September 22, 1988 (requiring filing of memorandum by both title companies concerning disposition of certain escrow funds) and October 6, 1988 (granting intervention but denying T.A. Title's motion to stay execution).

The majority asserts that the parties to this dispute "submitted their respective claims to the trial court on stipulated facts." There is nothing in the certified record to support this. While it is true that both Commonwealth and T.A. Title submitted memoranda of law to the trial court at various times and also participated in "legal argument" on October 14 and 21, 1988, I find nothing in the record which could arguably be deemed to be a stipulation either as to facts or to law. While counsel may have "recited" certain statements to the court, these "recited facts" are not found in the certified record.

My review of the October 21, 1988 orders causes me to conclude that they, together, constitute a final determination of the Commonwealth's and T.A. Title's competing claims to the proceeds of the Mellon Account. As such, the orders were final and appealable. There was no trial or similar proceeding; rather, the claims were resolved follow-

ing petition and rule and the oral argument of counsel. The orders finally determined what portion of the funds in the Mellon Account should be paid over to each of the parties. The orders resulted in the disbursement of all the funds in the Mellon Account.

The second October 21, 1988 order provides as follows:

AND NOW, this 21st day of October, 1988, upon consideration of this Court's Order of October 6, 1988, the September 22, 1988, Order of Judge Gafni, and all other matters of record, and after hearing it is hereby ORDERED:

1. Commonwealth Land Title Insurance Company ("Commonwealth") shall be entitled to, and permitted to retain from the $114,010.30 presently held in escrow ("escrow funds"), the amount of $55,010.78, said amount (together with the amount of $238,829.59 turned over to Commonwealth and not part of the escrow funds pursuant to a contemporaneous Order being entered this date) deemed to include $5,715.00 in costs expended by Commonwealth to obtain the pertinent bond and $3,439.08 in interest.

2. Commonwealth shall, as soon as practicable, pay over to T.A. Title Insurance Company (T.A.) the sum of $58,999.52 representing $58,295.30 principal and $704.22 in interest.

BY THE COURT,

s/ Sheppard

ALBERT W. SHEPPARD, JR., J.

This order clearly disposed of T.A. Title's claim to any portion of the Mellon Account. In my view, the order is both final and appealable. *Newman v. Thorn*, 359 Pa.Super. 274, 278, 518 A.2d 1231, 1233 (1986); *Lansdowne v. G.C. Murphy Co.*, 358 Pa.Super. 448, 452, 517 A.2d 1318, 1320 (1986); *Praisner v. Stocker*, 313 Pa.Super. 332, 336, 459 A.2d 1255, 1258 (1983). Since the October 21, 1988 orders were both final and appealable, T.A. Title was required to file an appeal within thirty days of their entry. Having failed to file timely appeals, the orders are now *res*

*judicata* and T.A. Title's post trial exceptions should be treated as a nullity. *See, e.g., U.S. National Bank in Johnstown v. Johnson,* 506 Pa. 622, 628–31, 487 A.2d 809, 813–14 (1985); *cf., Estate of Rossi,* 354 Pa.Super. 124, 511 A.2d 219 (1986).

The Notice of Appeal filed by T.A. Title declares that T.A. Title is appealing from "the Order entered in this matter on the 4th day of April, 1989, which Order has been reduced to judgment." The order entered on that date is the order of March 16, 1989 which merely (1) refuses to consider T.A. Title's exceptions to the FIRST October 21, 1988 order, (2) declares jurisdiction to consider the exceptions with respect to the SECOND October 21, 1988 order, and (3) dismisses T.A. Title's exceptions. I am unaware of any authority or rule of procedure which requires or permits such an order to be reduced to judgment. *Cf., U.S. National Bank in Johnstown v. Johnson, supra,* 506 Pa. at 629, 487 A.2d at 813. Therefore, seeking to bring this appeal within thirty days of the entry of such judgment does not improve T.A. Title's cause.

The SECOND October 21, 1988 order, set forth above, determined the rights of T.A. Title and the Commonwealth to all of the funds in the Mellon Account. The order determined the issues raised in T.A. Title's petition to intervene and to enjoin the Commonwealth from executing against the Mellon Account. Inasmuch as the order was entered to resolve claims raised by way of petition and rule to show cause, the filing of post-trial exceptions was both improper and a nullity. *Kennedy v. Frank L. Black, Jr., Inc.,* 271 Pa.Super. 454, 458–59, 413 A.2d 1104, 1107 (1979), *rev'd. on other grounds,* 492 Pa. 397, 424 A.2d 1250 (1981); *Haegele v. Pennsylvania General Insurance Co.,* 330 Pa. Super. 481, 488–90, 479 A.2d 1005, 1008–09 (1984).

While the majority is able to find jurisdiction to consider this appeal without citation to any authority and without expressly setting forth those facts which the majority understands to have been stipulated, I note that the trial court was unable to go further than to find that the matter was

"in the nature of a trial without jury on stipulated facts." Memorandum, March 16, 1989 (filed April 4, 1989), page 21. Judge Sheppard expressly found that:

[A]s to the facts submitted, although the various papers filed presented a substantially similar scenario, the submissions were not identical on every issue and were not manifestly agreed upon and submitted as a uniform statement ... Importantly, there was disagreement as to the precise time when each party discovered the fraud perpetrated by Doe....

. . . .

Secondly, the prayers for relief did not present a uniform request.

Memorandum, *supra*, pages 17, 18.

I am unaware of any case law holding that one may utilize the procedures set forth in Pa.R.C.P. 227.1 and file post-trial exceptions where there has been no trial, either with or without jury, and there have been no stipulated facts. Neither the majority nor Judge Sheppard point me towards such authority, if such exists. There are no transcripts of any hearings held in this case; there has been no testimony taken. The weakness of T.A. Title's position with respect to its claimed right to file post-trial motions is found in its averments concerning its manner of preserving its exceptions. Rule 227.1 provides that:

(b) Post-trial relief may not be granted unless the grounds therefore,

(1) if then available, were raised in pre-trial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial; and

(2) are specified in the motion.

A review of the Exceptions filed October 31, 1988 demonstrates that T.A. Title did not raise the grounds for post-trial relief in any of the accepted methods provided in Rule 227.1(b)(1). Rather than "excepting" to the *actions* or *rulings* of the trial judge, T.A. Title merely recounts where its "arguments" may be found. T.A. Title contends that its

"arguments" were made in (a) its Motion for Leave to Intervene as a Party Plaintiff and for an Order Preventing Disbursement of Attached Funds, (b) its Supplemental Memorandum of Law in support of the motion, and (c) its Second Supplemental Memorandum of Law in support of the motion. Exceptions of Plaintiff T.A. Title Insurance Company, filed October 31, 1988, 11, page 4, 18, page 6, and 27, page 8.

It is worthwhile noting that the recent amendments to Rule 227.1, adopted by Supreme Court Order of December 19, 1989, effective January 1, 1990, include an expanded NOTE following subparagraph (c) containing, in pertinent part, the following language:

NOTE: ... *A motion for post-trial relief may not be filed to* orders disposing of preliminary objections, motions for judgment on the pleadings or for summary judgment, motions relating to discovery or *other proceedings which do not constitute a trial. See U.S. National Bank in Johnstown v. Johnson, 506 Pa. 622, 487 809 (1985).*

A motion for post-trial relief may not be filed in a case stated.

*A motion for post-trial relief may not be filed to matters governed exclusively by the rules of petition practice.* (emphasis supplied).

Since the claims between the parties in fact were determined on the petitions and rule filed, and since there was no trial, it would not have been possible to utilize a motion, point for charge, request for findings, or offer of proof in order to preserve a ground for post-trial relief. It is understandable, under the circumstances, that T.A. Title is reduced to specifying "arguments" that appear in memoranda of law, rather than "exceptions" or "objections" to the trial court's rulings. In my view, this will not suffice to bring vitality to this appeal. Rule 227.1 does not apply. The attempted post-trial proceedings were improper. The trial court's March 16, 1989 order disposing of the "exceptions" should be deemed a nullity. Appeal not having been

timely brought from the October 21, 1988 orders, this appeal should be dismissed.

Since I firmly believe that the appeal should be dismissed, I take no position concerning those issues relating to enforcement of money judgments as may be set forth in the majority opinion. With that disclaimer, I respectfully dissent.